IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

**BRUCE E. FREDRICS and PROFESSIONAL
ADJUSTING & CONSULTING SERVICE, LLC**

    Plaintiffs,       CIVIL ACTION FILE NO.

 -vs-           2:21-CV-132-RWS

MEREDITH CORPORATION,
LYLE BANKS, and JOHN DOES,

   Defendants.

## RENEWAL COMPLAINT

Plaintiff Bruce E. Fredrics ("Bruce Fredrics" or "Fredrics") and Plaintiff

Professional Adjusting & Consulting Service, LLC ("PACS" or "PACS, LLC")

(collectively, "Plaintiffs"), having fully complied with, in part, Rule 41 and Rule

61 (for such renewal actions) of this Court and all costs having been fully paid, file

their ***Renewal Complaint*** against Defendants Meredith Corporation, licensee of

CBS46 News WGCL -TV , Atlanta, Georgia[1] (Defendant "Meredith Corporation"),

Lyle  Banks, at all times relevant hereto, was the former Vice President and

---

[1] WGCL-TV, channel 46 (UHF digital channel 19), is a CBS-affiliated television station licensed in Atlanta, Georgia and owned by the Meredith Local Media subsidiary of Des Moines, Iowa-based Meredith Corporation, as part of a duopoly (i.e., like a monopoly) with independent station WPCH-TV (channel 17).

General Manager of Defendant Meredith in charge of the content of the local news

of CBS46 News WGCL -TV, Atlanta, Georgia and its print and media outlets and

shows, especially the "Better Call Harry" show  ("Defendant  Banks"),  and  John

Does, who aided and abetted the other Defendants  (hereinafter, collectively,

referred to as "Defendants"); Plaintiffs state as follows:

## <u>PARTIES, JURISDICTION AND VENUE</u>

1.    Plaintiff Bruce Fredrics is a resident of Spalding County, Georgia.

2.    Plaintiff PACS, LLC is a Georgia Limited Liability Company domiciled in

Gainesville, Hall County, Georgia.

3.    Defendant Meredith Corporation is an Iowa corporation doing business in

Georgia, who has a principal office address and is domiciled at the so-called

1716 Locust Street , Des Moines, Iowa 50309. Defendant Meredith

Corporation maintains a registered office located in Gwinnett County.

Defendant Meredith Corporation can be served with process by serving their

Registered Agent, CT Corporation System at 289 S Culver Street,

Lawrenceville, Georgia 30046 .

4.    Defendant, Lyle Banks is a natural person who resides in Winnetka, Illinois.

Lyle Banks is subject to the jurisdiction of this court and can be served with

process at 1124 Merrill Street, Winnetka, Illinois 60093 and/or through

Defendant Meredith's registered agent CT Corporation System.

5.    Defendants John Doe individual(s) are those yet unidentified party-Defendants, who aided and abetted the other Defendants, and who are liable to Plaintiffs under the allegations set forth in this Complaint and are each subject to the jurisdiction and venue of this Court.

6.    Defendants John Doe business entity(ies) are those yet unidentified party-Defendants, who aided and abetted the other Defendants and who are liable to Plaintiffs under the allegations set forth in this Complaint and are each subject to the jurisdiction and venue of this Court.

## <u>NATURE OF THE ACTION</u>

7.    This defamation suit arises from intentionally fabricated and false statements that were aired and published by Defendants Meredith Corporation and Banks (aided and abetted by their counsel, their employees, and Margo Ellis ("Ms. Ellis")) alleging that Ms. Ellis was defrauded and scammed by Plaintiffs Bruce Fredrics and PACS, LLC. Defendants uttered and published malicious and knowlingly false defamations and/or defamations *per se* (hereinafter, collectively, "defamation") against Plaintiffs.

8.    Defendants Meredith Corporation and Banks published , promoted , and amplified multiple false statements and defamation *per se* during segments

with Better Call Harry CBS46 and on their CBS46 website with the

following URL : *https ://www.cbs46.com/*.[2]

9.     Defendants Meredith Corporation and Banks broadcasted multiple false

statements and  defamation against Plaintiffs ("news segments") to a wide

audience in at least two separate videos on or about May 28, 2019 and then

subsequently broadcasted additional false news segments thereafter,

continuing to this day.

10.     Defendants Meredith Corporation and Banks published multiple statements

and defamation against Plaintiffs in an article on or about May 29, 2019 and

then subsequently published additional false statements in another article

dated November 25 , 2019 to their website CBS46 with the following URL:

https ://www.cbs46 .com/.

11.     Plaintiffs bring this action to restore their reputation, clear their names,

ensure thta the truth prevails, stop the weaponization of false allegations of

fraud against them (i.e., Defendants *fake news*), and vindicate their rights.

## FACTUAL BACKGROUND

12.     In property loss and insurance claims, Plaintiff Bruce Fredrics through

Plaintiff, PACS, LLC offers services as a consultant, appraiser, expert

---

[2] See Exhibits A and B attached hereto and incorporated by reference herein.

witness, independent adjuster, and private adjuster or public adjuster.

13.  Plaintiffs' insurance field work and consultations consists of, i.e., evaluating clients' cases and claims on an individual basis and making professional determinations based on a client's needs and their specific damages/injuries.

14.  Prior to hiring Plaintiffs, Margo Ellis received an adjustment for her property damage claims from Nationwide, her insurer, for which she disagreed.

15.  Ms. Ellis contacted Plaintiffs through a third-party, to evaluate her claims.

16.  Plaintiffs then offered to assist Ms. Ellis by performing an appraisal.

17.  Ms. Ellis and Plaintiffs executed a contract which outlined the terms, fees, and scope of Plaintiffs' engagement (herein referred to as "Contract, " "Engagement," or "Agreement").

18.  Plaintiffs spoke with Ms. Ellis prior to the execution of the said Contract and fully answered Ms. Ellis's questions and concerns regarding their services.

19.  Plaintiffs performed the contracted-for appraisal work for Ms. Ellis .

20.  During this time, Plaintiff Bruce Fredrics utilized his professional expertise and two-panel appraisal skills to obtain an Appraisal award of $40,000.00 _new money_[3] for Ms. Ellis.

---

[3] Additional claim money from Ms. Ellis's insurer, over and above what Nationwide offered to pay her prior to her appointing/hiring Plaintiffs as her Appraisers - Defendants knew they were not adjusters but reported that Plaintiffs were Ellis' adjusters and were subject to Georgia laws for adjusters - they lied!!

21.  Ms. Ellis' insurance company, Universal Property & Casualty Insurance,
     (the "Insurer") wrote the check in both Plaintiffs' and Margo Ellis' names.

22.  Ms. Ellis, when Plaintiffs informed her that they received the $40,000.00
     check, demanded physical possession of the check.

23.  Ms. Ellis further demanded physical possession of the check and that it be
     endorsed by PACS, LLC and once check was honored, she would pay
     Plaintiffs what she thought was "fair," but not the 30% fee cap ($12,000.00)
     for which they both had agreed and for which they had contracted as
     Plaintiffs' legitimate fee.

24.  Plaintiff Fredrics explained, again, to Ms. Ellis that, as her Appraiser, the
     fees for the work performed were 30% of the new money as per their written
     Contract (i.e., at $300.00 per hour plus expenses, with a fee cap of up to 30%
     or $12,000.00, and Ms. Ellis retorted, "I [Ms. Ellis] am expressly aware of
     the terms of your contract."

25.  Ms. Ellis suddenly became hostile and, for the first time in their relationship,
     accused Plaintiffs of committing fraud and charging too much for the work
     they performed. She repeatedly interrogated Mr. Fredrics about his fees and
     the terms and scope of engagement.

26.  Plaintiffs reminded Ms. Ellis of their previous conversations and again

explained the fees, terms and scope of Plaintiffs' engagement, however, out of the clear blue sky, told Plaintiff Fredrics that he was trying to take advantage of her because she was black and yelled at him saying that he was a racist and hung up.

27. Not being able to force Plaintiffs through her own threats and intimidation, Ms. Ellis contacted Harry Samler ("Samler"), who is an alleged "investigative reporter" and the host of the CBS46 television segment, "*Better Call Harry*" (Defendants' TV program) in the hope to have Samler force Plaintiffs to reduce their fee by $10,000.00 (Ellis' Policy deductible).

28. Plaintiffs hired an attorney to make contact with Ms. Ellis and with Samler (her finally-admitted advocate) in an effort to resolve the fee dispute.

29. Ms. Ellis refused to communicate with Plaintiffs or Plaintiffs' Attorney directly and used Samler has her negotiator/advocate (as he had the power of the press behind him) and Defendants and Samler agreed with this symbiotic arrangement.

30. Defendant Harry Samler communicated with Plaintiffs and acted as an informal mediator, disguising his true nature as Ms. Ellis' advocate (and, notwithstanding the fact that Samler is not a licensed attorney, he gave Plaintiffs legal advice) while he was pressuring Plaintiffs to lower their

legitimate fees (having bought Ms. Ellis's lies hook line and sinker).

31. Plaintiff Bruce Fredrics explained to Samler, *ad nauseam*, that the fees were the result of performing work as an appraiser not as a public adjuster.

32. Plaintiff Fredrics explained the nature of the dispute between himself, PACS, LLC, and Margo Ellis but, unfortunately, Samler had a different, covert, agenda: Plaintiff Fredrics' account of the facts was publicly dismissed as false by Samler without independent investigation or objective basis in fact.

33. Under the agreement between Plaintiffs and Margo Ellis, monetary distribution as proposed by Plaintiffs was proper (they were not crooks!).

34. Samler advised Plaintiff Fredrics that he would not disparage Plaintiffs on the television show other than to alert the public that Plaintiff Fredrics was under investigation by the State.

35. Samler stated that he would air a "neutral" segment dedicated to the fee dispute between Ms. Ellis and Plaintiffs if Plaintiffs could fully explain their side; which Plaintiff Fredrics, in good faith, did: but Samler defamed them.

36. Samler totally, without any credible facts or legal evidence, disregarded Plaintiff Fredrics' account of the dispute with Ms. Ellis and proceeded to harass Fredrics for not cutting his fees $10,000.00 and settling with her and defamed them before the public. In fact, Samler refused to believe that there

was any sort of misunderstanding between Plaintiffs and Ms. Ellis and dismissed Plaintiff Fredrics' explanation without making any effort to investigate the truth of Fredrics' claims.

37.    Becoming impatient and dissatisfied with the outcome of the mediation efforts of Defendants and Samler, Ms. Ellis (upon information and belief, with the suggestion and assistance of Harry Samler and Defendants) submitted complaints containing maliciously false allegations to the Georgia Department of Insurance and the Georgia Secretary of State.

38.    Defendants, through Samler, threatened to air false allegations of fraud and illegal business practices unless Plaintiffs settled with Margo Ellis at a greatly reduced payment for his fees (this was Defendants extorting them).

39.    Plaintiffs, fearful of the segments potential to spread misinformation about Plaintiffs ' honorable and legitimate business, and refusing to be further blackmailed or extorted by Samler and Ms Ellis, filed suit to thwart Defendants' intentions to air the segment on CBS46 News which would defame them and accuse them, in part, of predatory business practices, fraudulent and illegal actions and omissions ("fraud"), and/or other criminal activities to defraud their clients.

40.    Due, in part, to the fact that Plaintiffs refused to pay Ms. Ellis monies she

was not entitled to under the terms of the agreement (i.e., give her the extra

$10,000.00), Defendants Banks and Meredith Corporation (aided and abetted

by Samler, their employee) spitefully published and republished defamation

and/or defamatory *per se* content against Plaintiffs; beginning on May 28,

2019 and continuing to the date of this filing.

41. Defendants obviously feared Plaintiffs' refusal to communicate with Samler

on air (not live, taped – which could be edited) about the matter involving

Ms. Ellis would hinder the viewer-ship of their *Better Call Harry* segment.

42. In an effort to prevent any bombardment of potentially defamatory media

from being aired by Defendants, Plaintiff Fredrics requested that the Judge

enforce a temporary injunction to prevent "fake news" media attention on

him and his businesses.

43. The injunction was orally denied[4] and Plaintiffs were negatively portrayed

by false statements and defamation *per se* made by Samler, Defendants

Banks and Meredith Corporation, their attorney S. Derek Bauer (who made

several maliciously false statements outside the courthouse shortly after said

---

[4] A short statement was put into the record of that hearing by the trial court right after the May 28, 2019 hearing – the Order was not memorialized or filed with the trial court until August 2, 2020 – but Defendants published their lies right after the hearing. As of this writing, Plaintiffs are currently going through the appeal process in the Georgia Appellate Courts.

May 28, 2019 hearing - especially demeaning Plaintiffs as "crooked"), and

John Does. These false light segments were aired multiple times thereafter to

the detriment and embarrassment of Plaintiffs.

44.    Defendants maliciously flexing their *power of the press*, forged ahead and

published false statements in the form of video segments, audio and video

clips, and written articles as retaliation against Plaintiffs for their legitimate

claims, evidence, and statements in court and to Samler (prior to Plaintiffs

filing subject Fulton County lawsuit) and acted with reckless disregard for

the truth, severely injured Plaintiffs and put them in a false light publically.

45.    Plaintiffs Fredrics and PACS were negatively portrayed by false statements

made by Margo Ellis and Defendants Banks, Meredith Corporation, and John

Does; and, despite the fact that each knew those statements were false and

were fabricated by Ms. Ellis solely to extort money from Plaintiffs, the

Defendants pressured Plaintiffs to capitulate otherwise Plaintiffs would feel

the full weight and power of the press – which they did and still do!

## **Defamatory Content A**

## **"Alleged Extortion Lands Better Call Harry In Court "**

46.    On or about  May 28, 2019, Defendants Banks and Meredith Corporation,

and John Does aired a segment titled, "Alleged Extortion Lands Better Call

*Page 11 of  37*

Harry In Court" ("Defamatory Content A") on the same day that testimony and evidence was given at Fulton County Superior Court.

47.    Defendants blatantly disregarded the evidence and the testimony of Plaintiff Bruce Fredrics that was presented at the May 28, 2019 hearing where Plaintiffs evidence and Plaintiff Fredric's sworn testimony revealed no wrongdoing by Plaintiffs, whatsoever.

48 .    On or about May 28, 2019, Defendants through CBS46 aired Defamatory Content A on Better Call Harry which was dedicated to falsely portraying Plaintiffs as engaging in fraudulent and illegal business practices at the expense of their clients and portraying Plaintiffs as being engaged in criminal conduct.

49.    Defamatory Content A is false.

50.    Defamatory Content A claims , among other things , that Plaintiff Fredrics defrauded Margo Ellis, wrongfully withheld her check, scammed her, used fraudulent and/or  illegal business practices against her, and then filed suit to "silence" Ms. Ellis.

51.    On or about May 29, 2019, Defendants published Defamatory Content A to their CBS46 News website again alleging that Plaintiffs engaged in fraudulent and predatory business practices at the expense of their clients.

52.    Defendants published Defamatory Content A on their social media

platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs

defrauded their clients.

53.    Defendants published and republished false statements contained in

Defamatory Content A on their social media platforms, including Twitter,

Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

54.    Defendants repeatedly publish and republish Defamatory Content A each

day, without correction, even to this day. As a result of Defendant Banks' and

Defendant Meredith Corporation's egregious actions, and those of their

employees at their direction and/or ratification, this defamatory content has

been repeatedly and foreseeably republished by media outlets and third

parties throughout the country and Plaintiffs' reputations have suffered.

## Defamatory Content B

## " Better Call Harry Sued for Extortion"

55.    On May 28 , 2019, shortly after the testimony and evidence was given at

Fulton County Superior Court for the subject hearing that day, Defendants

Banks, Meredith Corporation and John Does aired a segment titled, "Better

Call Harry Sued for Extortion" ("Defamatory Content B").

56.    Defendants blatantly disregarded the evidence and the testimony of Plaintiff

Bruce Fredrics that was presented at the May 28, 2019 hearing.

57.  Content B is false.

58.  Defamatory Content B claims, among other things, that Plaintiff Fredrics

defrauded Margo Ellis , wrongfully withheld her check, scammed her, used

fraudulent and illegal business practices against her, and then filed suit to

"silence" Ms. Ellis. In reality, Defendants' and Ms. Ellis' intent was to

destroy Plaintiffs and their businesses for not giving in to their extortion.

59.  On  or  about  May  29,  2019, Defendants  published Defamatory Content B

to their CBS46 News website, alleging, in part, that Plaintiffs engaged in

fraudulent and/or illegal business practices at the expense of – and which

injured – their clients.

60.  Defendants published Defamatory Content B on  their social media

platforms, including Twitter, Facebook, and YouTube alleging, in part, that

Plaintiffs defrauded their clients.

61.  Defendants published and republished the maliciously false statements

contained in Defamatory Content B on their social media platforms,

including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded

their clients.

62.  Defendants repeatedly publish and republish Defamatory Content B each

day, without correction, even to this day. As a result of Defendant Banks' and

Defendant Meredith Corporation's actions, the defamatory and defamatory

*per se* content has been repeatedly and foreseeably republished by media

outlets and third parties throughout the country.

## **Defamatory Content C**

## **"Better Call Harry Sued for Extortion "**

63.    On or about May 29, 2019, Defendants published an article on their website

titled , "Better Call Harry Sued for Extortion" ("Defamatory Content C")

alleging that Plaintiffs defrauded their clients.

64.    Defendants blatantly disregarded the evidence and the testimony of Plaintiff

Bruce Fredrics that was presented at the May 28, 2019 hearing.

65.    Defamatory Content C is false.

66.    On or about May 29, 2019, Defendants through CBS46 published

Defamatory Content C on their website which falsely portrayed Plaintiffs as

engaging in fraudulent and/or illegal business practices at the expense of

their clients.

67.    Defamatory Content C claims, among other things, that Plaintiff Fredrics

defrauded Margo Ellis, wrongfully withheld her check, scammed her, used

fraudulent and/or illegal business practices against her, and then filed suit to

"silence" Ms. Ellis. In reality, Defendants' and Ms. Ellis' intent was to

destroy Plaintiffs and their businesses for not giving in to their extortion.

68.    Defendants published Defamatory Content C on their social media platforms,

including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded

their clients.

69.    Defendants published and republished false statements contained in

Defamatory Content C on their social media platforms, including Twitter,

Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

70.    Defendants repeatedly publish and republish Defamatory Content C each

day, without correction, even to this day. As a result of Defendant Banks' and

Defendant Meredith Corporation's actions, the defamatory content has been

repeatedly and foreseeably republished by media outlets and third parties

throughout the country.

## Defamatory Content D

## "Public Adjuster Sues Better Call Harry,

## Sec. of State, and Insurance Commissioner"

71.    On or about November 25, 2019 , Defendants Banks, Meredith Corporation,

and John Does aired "Public Adjuster Sues Better Call Harry, Sec. of State ,

and Insurance Commissioner" segment ("Defamatory Content D") alleging

that Plaintiffs were defrauding their clients.

72.    Defendants blatantly disregarded the evidence and the testimony of Plaintiff Bruce Fredrics that was presented at the May 28, 2019 hearing.

73.    Defamatory Content D is false.

74.    On or about November 25, 2019, Defendants through CBS46 aired Defamatory Content D on Better Call Harry which was dedicated to falsely portraying Plaintiffs as engaging in fraudulent and/or illegal practices at the expense of their clients.

75.    Defamatory Content D claims, among other things, that Plaintiff Fredrics defrauded Margo Ellis, wrongfully withheld her check, scammed her, used fraudulent and/or illegal business practices against her, and then filed suit to "silence" Ms. Ellis. In reality, Defendants' and Ms. Ellis' intent was to destroy Plaintiffs and their businesses for not giving in to their extortion.

76.    On or about November 25, 2019, Defendants published Defamatory Content D to their CBS46 News website alleging that Plaintiffs engaged in fraudulent and/or illegal practices at the expense of their clients.

77.    Defendants published and republished Defamatory Content D on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

78.     Defendants repeatedly publish and republish Defamatory Content D each day, without correction, even to this day. As a result of Defendant Banks' and Defendant Meredith Corporation's actions, the defamatory and/or defamatory *per se* content has been repeatedly and foreseeably republished by media outlets and third parties throughout the country.

## Defamatory Content E

## "Woman Sues Insurance Expert After He Sues Better Call Harry, Insurance Commissioner and Georgia Secretary of State "

79.     On or about November 25, 2019, Defendants published an article on their website titled, "Woman Sues Insurance Expert After He Sues Better Call Harry, Insurance Commissioner and Georgia Secretary of State" ("Defamatory Content E") alleging that Plaintiffs defrauded their clients.

80.     Defendants blatantly disregarded the evidence and the testimony of Plaintiff Bruce Fredrics that was presented at the May 28, 2019 hearing.

81.     Defamatory Content E is false.

82.     On or about November 25, 2019, Defendants through CBS46 published Defamatory Content E on their website which falsely portrayed Plaintiffs as engaging in fraudulent and/or illegal practices at the expense of their clients.

83.     Defendants published Defamatory Content E on their social media

platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

84. Defendants published and republished false statements contained in Defamatory Content E on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

85 . Defendants repeatedly publish and republish Defamatory Content E each day, without correction, even to this day. As a result of Defendant Samler's, Defendant Banks ', Defendant Bauer's, and Defendant Meredith Corporation's actions, the defamatory content has been repeatedly and foreseeably republished by media outlets and third parties throughout the country.

## Defamatory Contents A, B, C, D, and E

86. Collectively, Defamatory Contents A , B, C, D and E will be referred to herein as the "Defamatory Content."

87. Defendants Banks, Meredith Corporation and John Does, in conspiracy with and/or aided and abetted by their employees and agents – especially Samler and Bauer – discredited Plaintiffs in the Defamatory Content because, i.e., Plaintiffs stated in open court (and in their pleadings) that Defendant Samler threatened to run maliciously false information about Plaintiffs unless

Plaintiffs paid Margo Ellis a substantially reduced fee (reduced by $10,000.00 her Policy deductible) and that Bauer made "unprotected," maliciously false statements outside the courthouse shortly after the subject May 28, 2019 hearing.

88. Defendants Banks, Meredith Corporation and John Does published the Defamatory Content despite knowing that the Secretary of State, fraud division, dropped their investigation due to a lack of merit (i.e., Margo Ellis' claims against Plaintiffs were bogus and/or maliciously false).

89. Defendants Banks, Meredith Corporation, Bauer, and John Does disregarded the account of facts given in Court, and in Plaintiffs' pleadings, and proceeded with publication of the Defamatory Content without making any independent confirmations of the bogus allegations and shredded the truth.

90. The Defamatory Content has forced Plaintiffs to – and will continue to force them – to expend their limited funds on corrective advertisements and publications on the fact that PACS is a legitimate business and did not defraud Margo Ellis. Plaintiffs were forced and will continue to be forced to pay for attorney fees and litigation costs to restore their reputation and clear their name, ensure the truth prevails, stop the weaponization of maliciously false allegations of fraud and illegal activities against them, and vindicate

their rights.

91.    Plaintiffs were damaged in an amount to be proven at trial.

## COUNT ONE - LIBEL

92.    Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1

through 91 of their Complaint as if fully restated herein.

93.    Defendants published Defamatory Content.

94.    The Defamatory Content contains false statements of fact.

95.    Defendants aired defamatory content[5] from the show, *Better Call Harry*, on

or about May 28, 2019, and then aired subsequent attacks on Plaintiffs

through follow up videos, video and audio clips, and written stories.

96.    The Defamatory Content was published and republished onto Defendants'

CBS46 News social media accounts including Facebook and YouTube where

they continue to be shared and viewed as of the date of this filing.

Defendants continue to authorize and consent to the republication of the

content, without correction, to this day.

97.    As a result of Defendants actions, the Defamatory Content has been

repeatedly and foreseeably republished by media outlets and other third

---

[5] This *content* was clearly devised and edited to splice, mix and match, partial truths to appear in *faux* sequences, in order to portray Plaintiffs in a bad light and to convince the public into believing that Plaintiffs were <u>crooks</u>.

parties throughout the country.

98.  As a result of the Defendants' actions, Plaintiffs' personal and professional reputations were injured, and Plaintiff Fredrics was exposed to public hatred, contempt, and ridicule.

99.  The false statements in the Defamatory Content are of and concerning Plaintiffs in that they allege Plaintiffs committed fraud and/or illegal acts (*faux* crimes) despite knowing that the Secretary of State's fraud division conducted a thorough and sifting investigation that totally exonerated Plaintiffs and, upon information and belief, determined that Margo Ellis' claims against Plaintiffs were bogus and/or maliciously false and that the Secretary of State did not, and never did, have regulatory authority over Plaintiffs as homeowners insurance claims Appraisers.

100.  Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

101.  The false statements defamed Plaintiffs in their trade and profession.

102.  The false statements caused actual damage to Plaintiffs, the full amount of which will be proven at trial.

103.  Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which raises a presumption of

conscious indifference to the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## COUNT TWO -SLANDER

104.   Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 103 of their Complaint as if fully restated herein.

105.   Defendants falsely misrepresented Plaintiffs by alleging that Plaintiffs committed theft and fraud and other illegal acts.

106.   Defendants published the Defamatory Content as statements of fact.

107.    Defendants in no way shape or form indicated that the Defamatory Content were to be interpreted as statements of opinion rather than fact.

108.   As a result of the Defendants ' actions, Plaintiffs' personal and professional reputation were injured, and Plaintiff Fredrics was exposed to public hatred, contempt, and ridicule.

109.   Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

110.   The false statements defamed Plaintiff Fredrics in his trade and profession.

111.   The false statements caused actual and severe damage to Plaintiffs, the full amount of which will be proven at trial.

112.   Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which raises a presumption of conscious indifference to the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## COUNT THREE - NEGLIGENT MISREPRESENTATION

113.   Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 112 of their Complaint as if fully restated herein.

114.   Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

115.   Plaintiffs show that Defendants made statements that Defendants knew to be false, misleading, and incorrect to Plaintiffs.

116.   Plaintiffs show that Defendants published statements that Defendants knew to be false, misleading and incorrect to and about Plaintiffs.

117.   The representations made by Defendants, however, were in fact negligent and false.

118.   Among other false statements, Defendants informed Plaintiffs that they would not disparage Plaintiffs on the Better Call Harry television show and only that they would alert the public that Plaintiff Fredrics was under investigation by the State, nothing more (i.e., no details of the basis for said

investigation(s) and/or of Ms. Ellis' allegations).

119.   At the time these representations were made by Defendants, Plaintiffs were deceived by Defendants and Samler and were ignorant of the falsity of their misrepresentations (i.e., Plaintiffs would not be defamed on air if they cooperated with Samler, made statements/supplied documents to "clear their names") and believed those promises by Defendants and Samler to be true. Plaintiffs' reliance on such false statements were reasonable and justified.

120.   Defendants, on the other hand, made the within and foregoing material misrepresentations, knowing them to be false and contrary to applicable state and federal law , with the intent to defraud and deceive Plaintiffs.

121.   Plaintiffs reasonably relied upon the information provided by Defendants and were damaged as a result of such misrepresentations and omissions. Had Plaintiffs known the true facts regarding Defendants' intentions, Plaintiffs would not have spoken with Samler or supplied him with information and documents and would not have been forced to incur legal costs and attorney fees and/or forced to defend against Defendants' defamatory attacks.

122.   In doing the acts alleged herein, Defendants acted with oppression, fraud, and malice and Plaintiffs are entitled to damages, the full extent of which is to be determined at trial.

## <u>COUNT FOUR - TORTIOUS INTERFERENCE</u>

123. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 122 of their Complaint as if fully restated herein.

124. Defendants acted improperly when they intervened in the contractual relationship between Plaintiffs and their client at the time, Margo Ellis.

125. Samler as well as Defendants Meredith Corporation, Banks , and John Does acted improperly when they interjected themselves in the contractual relationship between Plaintiffs and their client at the time Margo Ellis.

126. Samler acted improperly by posing as a non-impartial mediator  and by providing legal advice to Plaintiffs without a license to practice law.

127. Defendants acted with malice and with the intent to injure Plaintiffs in retaliation for Plaintiffs' refusal to capitulate to their extortion which deprived the *Better Call Harry* show with another feather in its cap and slowed down its quest to heroically reach $1,000,000.00 in *recovered* fees.

128. Defendants aired, published and republished defamatory content that contained false statements of fact intended to lure customers away from engaging in Plaintiffs' businesses (as they had threatened they would do).

129. As a direct result of Defendants' intervention, Plaintiffs and their former client Margo Ellis were unable to *re-enter* into a business relationship and

reach a resolution for their fee dispute. Defendants' conduct ultimately resulted in financial harm to Plaintiffs.

130.  As a result of Defendants Samler 's, Meredith Corporation 's, Banks', and John Does' intervention and blatant disregard for the truth, Plaintiffs and their former client, Margo Ellis, were unable to reach a settlement .

131.  Furthermore, as a direct and  proximate result of Defendants ' actions, Plaintiffs have suffered damages in the form of lost wages and lost business and the loss of their ability to earn an income at a level before Defendants' egregious acts and malicious defamation *per se*.

## <u>COUNT FIVE - TRADE LIBEL</u>

132.  Plaintiffs reallege and incorporate by reference Plaintiffs ' paragraphs 1 through 131 of their Complaint as if fully restated herein.

133.  Defendants published the Defamatory Content as statements of fact.

134.  Defendants in no way shape or form indicated that the Defamatory Content were to be interpreted as statements of opinion rather than fact.

135.  The Defamatory Content contains false statements of fact.

136.  Defendants aired and published defamatory content on or about May 28, 2019 , and then launched subsequent attacks on Plaintiffs through follow up videos and written stories .

137.  The Defamatory Content was published and republished onto Defendant CBS46 News' social media accounts including Facebook and YouTube (in order to spread Defendants' malicious defamation) where they continue to be shared and viewed as of the date of this filing. Defendants authorize and consent to the republication of these clips, without correction, to this day.

138.  Defendants published the Defamatory Content as statements of fact. Defendants in no way shape or form indicated that the defamatory statements were to be interpreted as statements of opinion rather than fact.

139.  As a result of Defendants actions, the Defamatory Content has been repeatedly and foreseeably republished by media outlets and other third parties throughout the country.

140 .  As a result of the Defendants' actions, Plaintiffs' personal and professional reputation were injured, and Plaintiff Fredrics was exposed to public hatred, contempt, and ridicule.

141.  The false statements in the Defamatory Content are of and concerning Plaintiffs in that they allege Plaintiffs committed fraud and/or engaged in predatory and/or illegal business practices.

142.  Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

143. The false statements defamed Plaintiff Fredrics in his trade and profession.

144 As direct and proximate result of Defendants ' actions, Plaintiffs have suffered damages in the form of lost income and business and reputations.

145. As a direct and proximate result of Defendants' actions, Plaintiffs' potential clients have refused to hire Plaintiffs for their services and have referenced the Defamatory Content that was published by Defendants as the reason for not hiring Plaintiffs.

146. The false statements caused actual damage to Plaintiffs, the full amount of which will be proven at trial.

147. Defendants' actions show willful misconduct, malice, fraud, wantonness , oppression and that entire want of care which raises  a presumption  of conscious  indifference  to  the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## **COUNT SIX - COMMERCIAL DISPARAGEMENT**

148. Plaintiffs reallege and incorporate by reference Plaintiffs' paragraphs 1 through 147 of their Complaint as if fully restated herein.

149. Defendants published the Defamatory Content as statements of fact.

150. Defendants in no way shape or form indicated that the Defamatory Content were to be interpreted as statements of opinion rather than fact.

151.   The Defamatory Content contains false statements of fact.

152.   Defendants aired the Defamatory Content on or about May 28, 2020 and then launched subsequent attacks on Plaintiffs through follow up videos and written stories.

153.   The Defamatory Content was published and republished onto Defendants' social media accounts including Facebook and YouTube where they continue to be shared and viewed as of the date of this filing.

154.   Defendants authorize and consent to the republication of these video and/or audio clips (and/or printed media), without correction, even to this day.

155.   Defendants  published the Defamatory Content as statements of fact.

156.   Defendants in no way shape or form indicated that the defamatory statements were to be interpreted as statements of opinion rather than fact.

157.   As a result of the Defendants' actions, Plaintiffs' professional reputations were injured, and Plaintiffs were exposed to public hatred, contempt , and ridicule.

158.   The false statements in the Defamatory Content are of and concerning Plaintiff Bruce Fredrics and his business, PACS, LLC in that they allege Plaintiffs committed fraud.

159.   The false statements defamed the Plaintiffs in their trade and profession.

160. As direct and proximate result of Defendants' actions, Plaintiffs have suffered damages in the form of lost income, wages, and lost business; in addition to Plaintiff Fredrics' personal and financial hardships.

161. As a direct and proximate result of Defendants 'actions, potential clients have refused to hire Plaintiffs for their services and have referenced the Defamatory Content published by Defendants as the reason for doing so.

162. As enumerated herein, as a direct result of Defendants' intervention, Plaintiffs and their former client, Margo Ellis, were unable to enter into a business relationship and reach a resolution of their fee dispute.

163. Defendants' conduct ultimately resulted in financial harm to Plaintiffs .

164. Defendant's malicious and false statements and interference caused actual damage to Plaintiffs, the full amount of which will be proven at trial.

165. Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which raises a presumption of conscious indifference to the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## COUNT SEVEN - VICARIOUS LIABILITY

166. Plaintiffs reallege and incorporate by reference Plaintiffs 'paragraphs 1 through 165 of their Complaint as if fully restated herein.

167. At all times relevant hereto, Samler and Defendants Banks and John Does were employees of Defendant Meredith Corporation's CBS46 News.

168. At all times relevant hereto, Samler and Defendants Banks and John Does were engaged in the duties required by their employer, Defendant Meredith Corporation.

169. At all times relevant hereto, Samler and Defendants Banks and John Does worked within the scope of their employment with Defendant Meredith Corporation.

170. Therefore, Defendant Meredith Corporation is liable for the acts and omissions of their employees, Samler, Defendants Banks and John Does.

## **COUNT EIGHT - FRAUD**

171. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 170 of their Complaint as if fully restated herein.

172. Plaintiffs show that Defendants falsely and fraudulently represented to Plaintiffs that they would not disparage, slander, or defame their character and professional business reputation.[6]

---

[6] First, Samler as employee of Defendant threatened to trash Plaintiff Bruce Fredrics if he didn't speak with him, convincing Plaintiff into telling Samler about their private businesses. Then, because Plaintiff was able to defend every lie told by Ellis, Samler became angry and showed his disappointment because, he realized that Ellis had duped him, and he had no juicy story after all. Curiously,

173.  The representations made  by Defendants were in fact false as Defendants did intend to (and planned to) slander, defame and disparage Plaintiffs on Defendants Meredith Corporation's and Banks' *Better Call Harry* show .

174.  At the time these representations were made by Samler and Defendants, Plaintiffs were ignorant of the falsity of Samler's and Defendants' representations and believed them to be true to their word. Plaintiffs' reliance on such false statements were reasonable and justified.

175.  Defendants, on the other hand, made the foregoing material misrepresentations, knowing them to be false and contrary to applicable state and federal law, with the intent to defraud and deceive Plaintiffs.

176.  As a proximate result of Defendants' fraud and deceit and the facts alleged

---

Samler was not mad that Ellis lied to him, he was mad that Plaintiff, the alleged crook, who he, as the alleged community hero, was going to expose was not really a crook at all. Samler also tried to tie-in the Quaran Bolden-Richardson case (where Plaintiffs were Defendants)  suggesting that the two case taken together proved that Plaintiffs were crooks. Plaintiff explained everything to Samler, and Samler essentially gave up on the phone, because there was no real story there. Samler was not happy about the outcome, but Samler and WCBS46 promised that they would not "smear" Plaintiffs on TV (on Samler's show "*Better Call Harry*" or otherwise). Defendants and their agents and employees knew the truth all along, and Plaintiff's testimony in the state court case was consistent with that truth. Defendant lied to the public anyway as a means to "get" Plaintiffs for exposing their extortion practices. The fact that Defendants knew the truth, accepted it, promised not to publish Ellis' lies, but then did it anyway to "get even" is rather telling. This was no accident, it was not negligence: ***it was wanton malice of forethought*** and purposely done to injure Plaintiffs.

herein, Plaintiffs suffered a concrete, particularized and imminent injury in that Plaintiffs have been defamed, maliciously accused of crimes. and deprived of substantial monies.

177. Further, Plaintiffs have suffered damages to their reputation and Plaintiff Fredrics was and continues to be exposed to public hatred, contempt, and ridicule.

178. In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs are entitled to damages.

## COUNT NINE - PUNITIVE DAMAGES

179. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1 through 178 of their Complaint as if fully restated herein.

180. Plaintiff Bruce Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

181. Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which raises a presumption of conscious indifference to the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

182. As direct and proximate result of Defendants' actions, Plaintiffs have suffered damages in the form of lost wages, lost income, and lost business.

## COUNT TEN - CONSPIRACY

183.   Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1

through 182 of their Complaint as if fully restated herein.

184.   At all times relevant hereto, Defendants, individually and in concert (aided

and abetted by Samler and Bauer), conspired to defame and harm and did

defame and harm Plaintiffs.

185.   As direct and proximate result of Defendants' conspiracies and/or egregious

actions and fraud, Plaintiffs have suffered damages in the form of lost

wages, lost income, and lost business.

186.   As willing and active participants in the conspiracies, Defendants are jointly

and severally liable for any and all damages suffered by Plaintiffs due to

their herein-enumerated egregious actions and fraud.

## COUNT ELEVEN - SPECIAL DAMAGES

187.   Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 1

through 186 of their Complaint as if fully restated herein.

188.   Because of Defendants' actions and fraud,[7] Plaintiffs have been forced to

---

[7] Especially Defendants' refusal to honor Plaintiffs' timely retraction and cease and desist requests (sent about the time as their spoliation letter to Defendant Meredith Corporation), and Defendants' threats by and through Bauer, their counsel, which were designed to chill Plaintiffs' First Amendment rights to seek redress from the courts, and which stifled Plaintiffs' hiring attempts for additional

hire counsel at a cost of Eighty-Five Thousand & 00/100ths ($85,000.00)

Dollars and have been forced to pay for the litigation costs of this action.

189.  As a direct and proximate result of Defendants' actions, Plaintiffs have

suffered damages to date in over $87,000.00 in special damages.

190.  Defendants are jointly and severally liable for any and all special damages

suffered by Plaintiffs but no less than $87,000.00, their costs to date.

## JURY   DEMAND

Plaintiffs hereby demand a trial by a fair and impartial jury.

**WHEREFORE**, Plaintiffs respectfully demand the following:

a.    That Plaintiffs recover compensatory damages and lost wages as determined by a fair and impartial jury;

b.    That Plaintiffs recover general, special, and punitive damages as determined by a fair and impartial jury but no less than than a recovery of $87,000.00 in special damages;

c.    That Plaintiffs recover all expenses and costs, including attorneys fees, as determined by a fair and impartial jury; and

d.    That this Court issue an injunction prohibiting the Defendants from disseminating, distributing, or publishing any footage or statements that are judicially determined to be defamatory;

e.    That Plaintiffs have such other and further relief as this Court deems fair, just, and equitable; and,

---

counsel to bring this action and to assist in its prosecution (one attorney, fearing Defendants' threats, recently withdrew from his representation of Plaintiffs).

*Page 36 of  37*

f.  That Defendants offer a public apology and allow Plaintiffs and their counsel to air an unedited rebuttal on all of their outlets for one week.

## <u>RULE 7 .1(D) CERTIFICATE</u>

The undersigned counsel certifies that this document has been prepared with one of the fonts and point selections approved by the Court in *Local Rule 5.l-C*, to wit: Times New Roman, 14 point.

This 20th day of June, 2021.


/s/ *Ralph J. Villani*
**Ralph J. Villani, Esq.**
GA Bar No.: 727700

***VILLANI LAW FIRM***
821 Dawsonville Hwy.
Suite 250-333
Gainesville, GA 30501-2634

(TEL) 770.985.6773
(FAX) 770.979.5190

(Email) *ralphjvillani@gmail.com*

**Counsel for Plaintiff**