IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

**BRUCE E. FREDRICS and PROFESSIONAL
ADJUSTING & CONSULTING SERVICE, LLC**

                Plaintiffs,                       CIVIL ACTION FILE

      -vs-                                 NO.:   **2:21-cv-132-SCJ**

MEREDITH CORPORATION,
LYLE BANKS, JOHN DOE INDIVIDUALS
and JOHN DOE BUSINESS ENTITIES,

                Defendants.

## **CORRECTED AMENDED RENEWAL COMPLAINT**

Plaintiff Bruce E. Fredrics ("Bruce Fredrics" or "Fredrics") and Plaintiff

Professional Adjusting & Consulting Service, LLC ("PACS" or "PACS, LLC")

(collectively, "Plaintiffs"), file their ***Corrected Amended Renewal Complaint*** to

correct jurisdictional and venue issues erroneously left out. Plaintiffs, having fully

complied with, *e.g.*, Rule 41 and Rule 61 (for such renewal actions) of this Court

and all costs having been fully paid, file this action against Defendants Meredith

Corporation, licensee of CBS46 News WGCL -TV, Atlanta, Georgia[1] (Defendant

---

[1] WGCL-TV, channel 46 (UHF digital channel 19), is a CBS-affiliated
television station licensed in Atlanta, Georgia and owned by the Meredith Local
Media subsidiary of Des Moines, Iowa-based Meredith Corporation, as part of a
duopoly (i.e., like a monopoly) with independent station WPCH-TV (channel 17).

"Meredith Corporation"),  Lyle  Banks, at all times relevant hereto, was the former

Vice President and General Manager of Defendant Meredith in charge of the

content of the local news of CBS46 News WGCL -TV, Atlanta, Georgia and its

print and media outlets and shows, especially the "Better Call Harry" show

("Defendant  Banks"),  and  John  Doe Individuals and John Doe Business Entities,

who aided and abetted the other named-Defendants  (hereinafter, collectively,

referred to as "Defendants"); Plaintiffs state as follows:

## PARTIES, JURISDICTION AND VENUE[2]

1.   Plaintiff Bruce Fredrics is a resident of Spalding County, Georgia

    ("Fredrics") and he is a citizen of the State of Georgia.

2.   Plaintiff PACS, LLC is a Georgia Limited Liability Company domiciled in

    Gainesville, Hall County, Georgia ("PACS") and its only member, Plaintiff

    Bruce Fredrics, is a citizen of the state of Georgia.

3.   Defendant Meredith Corporation is an Iowa corporation doing business in

    Georgia, and who's citizenship is in the State of Iowa and who's principal

    place of business is at the so-called 1716 Locust Street, Des Moines, Iowa

---

[2] Defendants are subject to the jurisdiction of this Court due to, in part, the diversity of their citizenship and the amount of Plaintiffs' claims. Further, venue is proper in this Court, in part, because PACS is domiciled in Hall County, Georgia, and PACS is a citizen of Georgia.

50309. Defendant Meredith Corporation maintains a registered office located in Gwinnett County. Defendant Meredith Corporation can be served with process by serving their Registered Agent, CT Corporation System at 289 S Culver Street, Lawrenceville, Georgia 30046 .

4.      Defendant, Lyle Banks ("Banks") is a natural person and an employee of Defendant Meredith Corporation. Banks is a citizen of the State Illinois and who resides in Winnetka, Illinois. Lyle Banks is subject to the jurisdiction of this court and can be served with process at 1124 Merrill Street, Winnetka, Illinois 60093 and/or through Defendant Meredith's registered agent CT Corporation System.

5.      Defendants John Doe individual(s) are those yet-to-be-identified party-Defendants are employees of Defendant Meredith Corporation who aided and abetted the other Defendants, and who are liable to Plaintiffs under the allegations set forth in this Complaint and are each subject to the jurisdiction and venue of this Court.

6.      Defendants John Doe business entity(ies) are those yet unidentified business and/or corporate entities who aided and abetted the other Defendants and who are liable to Plaintiffs under the allegations set forth in this Complaint and are each subject to the jurisdiction and venue of this Court.

## <u>NATURE OF THE ACTION</u>

7.    This defamation suit arises from intentionally fabricated and false statements that were aired and published by Defendants Meredith Corporation and Banks (aided and abetted by their counsel, their employees, and Margo Ellis ("Ms. Ellis")) alleging that Ms. Ellis was defrauded and scammed by Plaintiffs Bruce Fredrics and PACS, LLC. Defendants uttered and published malicious and knowlingly false defamations and/or defamations *per se* (hereinafter, collectively, "defamation") and fraud and deceit perpetrated against Plaintiffs.

8.    Defendants Meredith Corporation and Banks published, promoted , and amplified multiple false statements and defamation *per se* during segments with Better Call Harry CBS46 and on their CBS46 website with the following URL : *https ://www.cbs46.com/*.[3]

9.    Defendants Meredith Corporation and Banks broadcasted multiple false statements and  defamation against Plaintiffs ("news segments") to a wide audience in at least two separate videos on or about May 28, 2019 and then subsequently broadcasted additional false news segments thereafter, continuing to this day.

---

[3] See Exhibits A and B attached hereto and incorporated by reference herein.

10.   Defendants Meredith Corporation and Banks published multiple statements and defamation against Plaintiffs in an article on or about May 29, 2019 and then subsequently published additional false statements in another article dated November 25 , 2019 to their website CBS46 with the following URL: https ://www.cbs46 .com/.

11.   Plaintiffs also bring this action to restore their reputation, clear their names, ensure that the truth prevails, stop the weaponization of false allegations of fraud against them (i.e., Defendants *fake news*), and vindicate their rights.

## FACTUAL BACKGROUND

12.   In property loss and insurance claims, Plaintiff Bruce Fredrics through Plaintiff, PACS, LLC offers services as a consultant, appraiser, expert witness, independent adjuster, and private adjuster or public adjuster.

13.   Plaintiffs' insurance field work and consultations consists of, i.e., evaluating clients' cases and claims on an individual basis and making professional determinations based on a client's needs and their specific damages/injuries.

14.   Prior to hiring Plaintiffs, Margo Ellis received an adjustment for her property damage claims from Nationwide, her insurer, for which she disagreed.

15.   Ms. Ellis contacted Plaintiffs through a third-party, to evaluate her claims.

16.   Plaintiffs then offered to assist Ms. Ellis by performing an appraisal.

17.   Ms. Ellis and Plaintiffs executed a contract which outlined the terms, fees, and scope of Plaintiffs' engagement (herein referred to as "Contract, " "Engagement," or "Agreement").

18.   Plaintiffs spoke with Ms. Ellis prior to the execution of the said Contract and fully answered Ms. Ellis's questions and concerns regarding their services.

19.   Plaintiffs performed the contracted-for appraisal work for Ms. Ellis .

20.   During this time, Plaintiff Bruce Fredrics utilized his professional expertise and two-panel appraisal skills to obtain an Appraisal award of $40,000.00 _new money_[4] for Ms. Ellis.

21.   Ms. Ellis' insurance company, Universal Property & Casualty Insurance, (the "Insurer") wrote the check in both Plaintiffs' and Margo Ellis' names.

22.   Ms. Ellis, when Plaintiffs informed her that they received the $40,000.00 check, demanded physical possession of the check.

23.   Ms. Ellis further demanded physical possession of the check and that it be endorsed by PACS, LLC and once check was honored, she would pay Plaintiffs what she thought was "fair," but not the 30% fee cap ($12,000.00) for which they both had agreed and for which they had contracted as

---

[4] Additional claim money from Ms. Ellis's insurer, over and above what Nationwide offered to pay her prior to her appointing/hiring Plaintiffs as her Appraisers - Defendants knew they were not adjusters but reported that Plaintiffs were Ellis' adjusters and were subject to Georgia laws for adjusters - they lied!!

*Page 6 of 39*

Plaintiffs' legitimate fee.

24.   Plaintiff Fredrics explained, again, to Ms. Ellis that, as her Appraiser, the

fees for the work performed were 30% of the new money as per their written

Contract (i.e., at $300.00 per hour plus expenses, with a fee cap of up to 30%

or $12,000.00, and Ms. Ellis retorted, "I [Ms. Ellis] am expressly aware of

the terms of your contract."

25.   Ms. Ellis suddenly became hostile and, for the first time in their relationship,

accused Plaintiffs of committing fraud and charging too much for the work

they performed. She repeatedly interrogated Mr. Fredrics about his fees and

the terms and scope of engagement.

26.   Plaintiffs reminded Ms. Ellis of their previous conversations and again

explained the fees, terms and scope of Plaintiffs' engagement, however, out

of the clear blue sky, told Plaintiff Fredrics that he was trying to take

advantage of her because she was black and yelled at him saying that he was

a racist and hung up.

27.   Not being able to force Plaintiffs through her own threats and intimidation,

Ms. Ellis contacted Harry Samler ("Samler"), who is an alleged

"investigative reporter" and the host of the CBS46 television segment,

"*Better Call Harry*" (Defendants' TV program) in the hope to have Samler

force Plaintiffs to reduce their fee by $10,000.00 (Ellis' Policy deductible).

28.   Plaintiffs hired an attorney to make contact with Ms. Ellis and with Samler

(her finally-admitted advocate) in an effort to resolve the fee dispute.

29.   Ms. Ellis refused to communicate with Plaintiffs or Plaintiffs' Attorney

directly and used Samler has her negotiator/advocate (as he had the power of

the press behind him) and Defendants and Samler agreed with this symbiotic

arrangement.

30.   Defendant Harry Samler communicated with Plaintiffs and acted as an

informal mediator, disguising his true nature as Ms. Ellis' advocate[5] (and,

notwithstanding the fact that Samler is not a licensed attorney, he gave

Plaintiffs legal advice) while he was pressuring Plaintiffs to lower their

legitimate fees (having bought Ms. Ellis's lies hook line and sinker).

31.   Plaintiff Bruce Fredrics explained to Samler, *ad nauseam*, that the fees were

the result of performing work as an appraiser not as a public adjuster.

32.   Plaintiff Fredrics explained the nature of the dispute between himself, PACS,

LLC, and Margo Ellis but, unfortunately, Samler had a different, covert,

agenda: Plaintiff Fredrics' account of the facts was publicly dismissed as

---

[5] Samler, with the consent and ratification of Defendant Meredith, defrauded and deceived Plaintiffs who reasonable believed that Samler was being a "neutral" party, and not Ellis' and Meredith Corporation advocates with a hidden agenda, to their detriment and injury.

false by Samler without independent investigation or objective basis in fact.

33.   Under the agreement between Plaintiffs and Margo Ellis, monetary

distribution as proposed by Plaintiffs was proper (they were not crooks!).

34.   Samler advised Plaintiff Fredrics that he would not disparage Plaintiffs on

the television show other than to alert the public that Plaintiff Fredrics was

under investigation by the State (see, also, FN #4).

35.   Samler stated that he would air a "neutral" segment dedicated to the fee

dispute between Ms. Ellis and Plaintiffs if Plaintiffs could fully explain their

side; which Plaintiff Fredrics, in good faith, did: but Samler defamed them.

36.   Samler totally, without any credible facts or legal evidence, disregarded

Plaintiff Fredrics' account of the dispute with Ms. Ellis and proceeded to

harass Fredrics for not cutting his fees $10,000.00 and settling with her and

defamed them before the public. In fact, Samler refused to believe that there

was any sort of misunderstanding between Plaintiffs and Ms. Ellis and

dismissed Plaintiff Fredrics' explanation without making any effort to

investigate the truth of Fredrics' claims.

37.   Becoming impatient and dissatisfied with the outcome of the mediation

efforts of Defendants and Samler, Ms. Ellis (upon information and belief,

with the suggestion and assistance of Harry Samler and Defendants)

submitted complaints containing maliciously false allegations to the Georgia Department of Insurance and the Georgia Secretary of State.

38.   Defendants, through Samler, threatened to air false allegations of fraud and illegal business practices unless Plaintiffs settled with Margo Ellis at a greatly reduced payment for his fees (this was Defendants extorting them).

39.   Plaintiffs, fearful of the segments potential to spread misinformation about Plaintiffs ' honorable and legitimate business, and refusing to be further blackmailed or extorted by Samler and Ms Ellis, filed suit to thwart Defendants' intentions to air the segment on CBS46 News which would defame them and accuse them, in part, of predatory business practices, fraudulent and illegal actions and omissions ("fraud"), and/or other criminal activities to defraud their clients.

40.   Due, in part, to the fact that Plaintiffs refused to pay Ms. Ellis monies she was not entitled to under the terms of the agreement (i.e., give her the extra $10,000.00), Defendants Banks and Meredith Corporation (aided and abetted by Samler, their employee) spitefully published and republished defamation and/or defamatory *per se* content against Plaintiffs; beginning on May 28, 2019 and continuing to the date of this filing.

41.   Defendants obviously feared Plaintiffs' refusal to communicate with Samler

on air (not live, taped – which could be edited) about the matter involving

Ms. Ellis would hinder the viewer-ship of their *Better Call Harry* segment.

42.    In an effort to prevent any bombardment of potentially defamatory media

from being aired by Defendants, Plaintiff Fredrics requested that the Judge

enforce a temporary injunction to prevent "fake news" media attention on

him and his businesses.

43.    The injunction was orally denied[6] and Plaintiffs were negatively portrayed

by false statements and defamation *per se* made by Samler, Defendants

Banks and Meredith Corporation, their attorney S. Derek Bauer (who made

several maliciously false statements outside the courthouse shortly after said

May 28, 2019 hearing - especially demeaning Plaintiffs as "crooked"), and

John Does. These false light segments were malicious and untrue yet they

were aired multiple times thereafter to the detriment and embarrassment of

Plaintiffs

44.    Defendants maliciously flexing their *power of the press*, forged ahead and

published false statements in the form of video segments, audio and video

---

[6] A short statement was put into the record of that hearing by the trial court
right after the May 28, 2019 hearing – the Order was not memorialized or filed
with the trial court until August 2, 2020 – but Defendants published their lies right
after the hearing. As of this writing, Plaintiffs are currently going through the
appeal process in the Georgia Appellate Courts.

clips, and written articles as retaliation against Plaintiffs for their legitimate

claims, evidence, and statements in court and to Samler (prior to Plaintiffs

filing subject Fulton County lawsuit) and acted with reckless disregard for

the truth, severely injured Plaintiffs and put them in a false light publically.

45.   Plaintiffs Fredrics and PACS were negatively portrayed by false statements

made by Margo Ellis and Defendants Banks, Meredith Corporation, and John

Does; and, despite the fact that each knew those statements were false and

were fabricated by Ms. Ellis solely to extort money from Plaintiffs, the

Defendants pressured Plaintiffs to capitulate otherwise Plaintiffs would feel

the full weight and power of the press – which they did and still do!

## Defamatory Content A

## "Alleged Extortion Lands Better Call Harry In Court "

46.   On or about May 28, 2019, Defendants Banks and Meredith Corporation,

and John Does aired a segment titled, "Alleged Extortion Lands Better Call

Harry In Court" ("Defamatory Content A") on the same day that testimony

and evidence was given at Fulton County Superior Court.

47.   Defendants blatantly disregarded the evidence and the testimony of Plaintiff

Bruce Fredrics that was presented at the May 28, 2019 hearing where

Plaintiffs evidence and Plaintiff Fredric's sworn testimony revealed no

wrongdoing by Plaintiffs, whatsoever.

48 .   On or about May 28, 2019, Defendants through CBS46 aired Defamatory

Content A on Better Call Harry which was dedicated to falsely portraying

Plaintiffs as engaging in fraudulent and illegal business practices at the

expense of their clients and portraying Plaintiffs as being engaged in

criminal conduct.

49.   Defamatory Content A is false.

50.   Defamatory Content A claims , among other things , that Plaintiff Fredrics

defrauded Margo Ellis, wrongfully withheld her check, scammed her, used

fraudulent and/or  illegal business practices against her, and then filed suit to

"silence" Ms. Ellis.

51.   On or about May 29, 2019, Defendants published Defamatory Content A to

their CBS46 News website again alleging that Plaintiffs engaged in

fraudulent and predatory business practices at the expense of their clients.

52.   Defendants published Defamatory Content A on their social media

platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs

defrauded their clients.

53.   Defendants published and republished false statements contained in

Defamatory Content A on their social media platforms, including Twitter,

Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

54.   Defendants repeatedly publish and republish Defamatory Content A each
day, without correction, even to this day. As a result of Defendant Banks' and
Defendant Meredith Corporation's egregious actions, and those of their
employees at their direction and/or ratification, this defamatory content has
been repeatedly and foreseeably republished by media outlets and third
parties throughout the country and Plaintiffs' reputations have suffered.

## **Defamatory Content B**

## **" Better Call Harry Sued for Extortion"**

55.   On May 28 , 2019, shortly after the testimony and evidence was given at
Fulton County Superior Court for the subject hearing that day, Defendants
Banks, Meredith Corporation and John Does aired a segment titled, "Better
Call Harry Sued for Extortion" ("Defamatory Content B").

56.   Defendants blatantly disregarded the evidence and the testimony of Plaintiff
Bruce Fredrics that was presented at the May 28, 2019 hearing.

57.   Content B is false.

58.   Defamatory Content B claims, among other things, that Plaintiff Fredrics
defrauded Margo Ellis , wrongfully withheld her check, scammed her, used
fraudulent and illegal business practices against her, and then filed suit to

"silence" Ms. Ellis. In reality, Defendants' and Ms. Ellis' intent was to destroy Plaintiffs and their businesses for not giving in to their extortion.

59.   On or about May 29, 2019, Defendants published Defamatory Content B to their CBS46 News website, alleging, in part, that Plaintiffs engaged in fraudulent and/or illegal business practices at the expense of – and which injured – their clients.

60.   Defendants published Defamatory Content B on their social media platforms, including Twitter, Facebook, and YouTube alleging, in part, that Plaintiffs defrauded their clients.

61.   Defendants published and republished the maliciously false statements contained in Defamatory Content B on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

62.   Defendants repeatedly publish and republish Defamatory Content B each day, without correction, even to this day. As a result of Defendant Banks' and Defendant Meredith Corporation's actions, the defamatory and defamatory *per se* content has been repeatedly and foreseeably republished by media outlets and third parties throughout the country.

## Defamatory Content C

*Page 15 of 39*

## "Better Call Harry Sued for Extortion "

63.   On or about May 29, 2019, Defendants published an article on their website

   titled , "Better Call Harry Sued for Extortion" ("Defamatory Content C")

   alleging that Plaintiffs defrauded their clients.

64.   Defendants blatantly disregarded the evidence and the testimony of Plaintiff

   Bruce Fredrics that was presented at the May 28, 2019 hearing.

65.   Defamatory Content C is false.

66.   On or about May 29, 2019, Defendants through CBS46 published

   Defamatory Content C on their website which falsely portrayed Plaintiffs as

   engaging in fraudulent and/or illegal business practices at the expense of

   their clients.

67.   Defamatory Content C claims, among other things, that Plaintiff Fredrics

   defrauded Margo Ellis, wrongfully withheld her check, scammed her, used

   fraudulent and/or illegal business practices against her, and then filed suit to

   "silence" Ms. Ellis. In reality, Defendants' and Ms. Ellis' intent was to

   destroy Plaintiffs and their businesses for not giving in to their extortion.

68.   Defendants published Defamatory Content C on their social media platforms,

   including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded

   their clients.

69.  Defendants published and republished false statements contained in Defamatory Content C on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

70.  Defendants repeatedly publish and republish Defamatory Content C each day, without correction, even to this day. As a result of Defendant Banks' and Defendant Meredith Corporation's actions, the defamatory content has been repeatedly and foreseeably republished by media outlets and third parties throughout the country.

## Defamatory Content D

## "Public Adjuster Sues Better Call Harry,

## Sec. of State, and Insurance Commissioner"

71.  On or about November 25, 2019 , Defendants Banks, Meredith Corporation, and John Does aired "Public Adjuster Sues Better Call Harry, Sec. of State , and Insurance Commissioner" segment ("Defamatory Content D") alleging that Plaintiffs were defrauding their clients.

72.  Defendants blatantly disregarded the evidence and the testimony of Plaintiff Bruce Fredrics that was presented at the May 28, 2019 hearing.

73.  Defamatory Content D is false.

74.  On or about November 25, 2019, Defendants through CBS46 aired

Defamatory Content D on Better Call Harry which was dedicated to falsely portraying Plaintiffs as engaging in fraudulent and/or illegal practices at the expense of their clients.

75.  Defamatory Content D claims, among other things, that Plaintiff Fredrics defrauded Margo Ellis, wrongfully withheld her check, scammed her, used fraudulent and/or illegal business practices against her, and then filed suit to "silence" Ms. Ellis. In reality, Defendants' and Ms. Ellis' intent was to destroy Plaintiffs and their businesses for not giving in to their extortion.

76.  On or about November 25, 2019, Defendants published Defamatory Content D to their CBS46 News website alleging that Plaintiffs engaged in fraudulent and/or illegal practices at the expense of their clients.

77.  Defendants published and republished Defamatory Content D on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

78.  Defendants repeatedly publish and republish Defamatory Content D each day, without correction, even to this day. As a result of Defendant Banks' and Defendant Meredith Corporation's actions, the defamatory and/or defamatory *per se* content has been repeatedly and foreseeably republished by media outlets and third parties throughout the country.

## Defamatory Content E

## "Woman Sues Insurance Expert After He Sues Better Call Harry, Insurance Commissioner and Georgia Secretary of State "

79.   On or about November 25, 2019, Defendants published an article on their website titled, "Woman Sues Insurance Expert After He Sues Better Call Harry, Insurance Commissioner and Georgia Secretary of State" ("Defamatory Content E") alleging that Plaintiffs defrauded their clients.

80.   Defendants blatantly disregarded the evidence and the testimony of Plaintiff Bruce Fredrics that was presented at the May 28, 2019 hearing.

81.   Defamatory Content E is false.

82.   On or about November 25, 2019, Defendants through CBS46 published Defamatory Content E on their website which falsely portrayed Plaintiffs as engaging in fraudulent and/or illegal practices at the expense of their clients.

83.   Defendants published Defamatory Content E on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

84.   Defendants published and republished false statements contained in Defamatory Content E on their social media platforms, including Twitter, Facebook, and YouTube alleging that Plaintiffs defrauded their clients.

85 .    Defendants repeatedly publish and republish Defamatory Content E each

day, without correction, even to this day. As a result of Defendant Samler's,

Defendant Banks ', Defendant Bauer's, and Defendant Meredith

Corporation's actions, the defamatory content has been repeatedly and

foreseeably republished by media outlets and third parties throughout the

country.

## Defamatory Contents A, B, C, D, and E

86.    Collectively, Defamatory Contents A , B, C, D and E will be referred to

herein as the "Defamatory Content."

87.    Defendants Banks, Meredith Corporation and John Does, in conspiracy with

and/or aided and abetted by their employees and agents – especially Samler

and Bauer – discredited Plaintiffs in the Defamatory Content because, i.e.,

Plaintiffs stated in open court (and in their pleadings) that Defendant Samler

threatened to run maliciously false information about Plaintiffs unless

Plaintiffs paid Margo Ellis a substantially reduced fee (reduced by

$10,000.00 her Policy deductible) and that Bauer made "unprotected,"

maliciously false statements outside the courthouse shortly after the subject

May 28, 2019 hearing.

88.    Defendants Banks, Meredith Corporation and John Does published the

Defamatory Content despite knowing that the Secretary of State, fraud division, dropped their investigation due to a lack of merit (i.e., Margo Ellis' claims against Plaintiffs were bogus and/or maliciously false).

89. Defendants Banks, Meredith Corporation, Bauer, and John Does disregarded the account of facts given in Court, and in Plaintiffs' pleadings, and proceeded with publication of the Defamatory Content without making any independent confirmations of the bogus allegations and shredded the truth.

90. The Defamatory Content has forced Plaintiffs to – and will continue to force them – to expend their limited funds on corrective advertisements and publications on the fact that PACS is a legitimate business and did not defraud Margo Ellis. Plaintiffs were forced and will continue to be forced to pay for attorney fees and litigation costs to restore their reputation and clear their name, ensure the truth prevails, stop the weaponization of maliciously false allegations of fraud and illegal activities against them, and vindicate their rights.

91. Plaintiffs were damaged in an amount to be proven at trial.

## **COUNT ONE - LIBEL**

92. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 87 through 89 of their Complaint as if fully restated herein.

93. Defendants maliciously and wantonly published subject Defamatory Content.

94. The Defamatory Content contains false statements of fact.

95. Defendants aired defamatory content[7] from the show, *Better Call Harry*, on or about May 28, 2019, and then aired subsequent attacks on Plaintiffs through follow up videos, video and audio clips, and written stories.

96. The Defamatory Content was published and republished onto Defendants' CBS46 News social media accounts including Facebook and YouTube where they continue to be shared and viewed as of the date of this filing. Defendants continue to authorize and consent to the republication of the content, without correction, to this day.

97. As a result of Defendants actions, the Defamatory Content has been repeatedly and foreseeably republished by media outlets and other third parties throughout the country.

98. As a result of the Defendants' actions, Plaintiffs ' personal and professional reputations were injured, and Plaintiff Fredrics was exposed to public hatred, contempt, and ridicule.

---

[7] This *content* was clearly devised and edited to splice, mix and match, partial truths to appear in *faux* sequences, in order to portray Plaintiffs in a bad light and to convince the public into believing that Plaintiffs were *crooks*.

99.    The false statements in the Defamatory Content are of and concerning Plaintiffs in that they allege Plaintiffs committed fraud and/or illegal acts (*faux* crimes) despite knowing that the Secretary of State's fraud division conducted a thorough and sifting investigation that totally exonerated Plaintiffs and, upon information and belief, determined that Margo Ellis' claims against Plaintiffs were bogus and/or maliciously false and that the Secretary of State did not, and never did, have regulatory authority over Plaintiffs as homeowners insurance claims Appraisers.

100.    Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

101.    The false statements defamed Plaintiffs in their trade and profession.

102.    The false statements caused actual damage to Plaintiffs, the full amount of which will be proven at trial.

103.    Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which raises a presumption of conscious indifference to the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## COUNT TWO -SLANDER

104.    Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 87

through 89 of their Complaint as if fully restated herein.

105. Defendants falsely misrepresented Plaintiffs by alleging that Plaintiffs committed theft and fraud and other illegal acts.

106. Defendants published the Defamatory Content as statements of fact and not their opinions.

107.  Defendants in no way shape or form indicated that the Defamatory Content were to be interpreted as statements of opinion rather than fact.

108. As a result of the Defendants ' actions, Plaintiffs' personal and professional reputation were injured, and Plaintiff Fredrics was exposed to public hatred, contempt, and ridicule.

109. Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

110. The false statements defamed Plaintiff Fredrics in his trade and profession.

111. The false statements caused actual and severe damage to Plaintiffs, the full amount of which will be proven at trial.

112. Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which raises a presumption of conscious indifference to the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## <u>COUNT THREE - NEGLIGENT MISREPRESENTATION</u>

113. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 89 through 92 of their Complaint as if fully restated herein.

114. Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

115. Plaintiffs show that Defendants made statements that Defendants knew to be false, misleading, and incorrect as they related and concerned Plaintiffs.

116. Plaintiffs show that Defendants published statements that Defendants knew to be false, misleading and incorrect concerning and about Plaintiffs.

117. The representations made by Defendants, however, were in fact negligent and false, where published as facts and not opinions.

118. Among other false statements, Defendants informed Plaintiffs that they would not disparage Plaintiffs on the Better Call Harry television show and only that they would alert the public that Plaintiff Fredrics was under investigation by the State, nothing more (i.e., no details of the basis for said investigation(s) and/or of Ms. Ellis' allegations).

119. At the time these representations were made by Defendants, Plaintiffs were deceived by Defendants and Samler and were ignorant of the falsity of their misrepresentations (i.e., Plaintiffs would not be defamed on air if they

cooperated with Samler, made statements/supplied documents to "clear their names") and believed those promises by Defendants and Samler to be true. Plaintiffs' reliance on such false statements were reasonable and justified.

120. Defendants, on the other hand, made the within and foregoing material misrepresentations, knowing them to be false and contrary to applicable state and federal law , with the intent to defraud and deceive Plaintiffs.

121. Plaintiffs reasonably relied upon the information provided by Defendants and were damaged as a result of such misrepresentations and omissions. Had Plaintiffs known the true facts regarding Defendants' intentions, Plaintiffs would not have spoken with Samler or supplied him with information and documents and would not have been forced to incur legal costs and attorney fees and/or forced to defend against Defendants' defamatory attacks.

122. In doing the acts alleged herein, Defendants acted with oppression, fraud, and malice and Plaintiffs are entitled to damages, the full extent of which is to be determined at trial.

## **COUNT FOUR - TORTIOUS INTERFERENCE**

123. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 27, 29 through 32, 34 through 38, 44, and 45 of their Complaint as if fully restated herein.

124. Defendants acted improperly when they intervened in the contractual relationship between Plaintiffs and their client at the time, Margo Ellis.

125. Samler as well as Defendants Meredith Corporation, Banks , and John Does acted improperly when they interjected themselves in the contractual relationship between Plaintiffs and their client at the time Margo Ellis.

126. Samler acted improperly by posing as a non-impartial mediator  and by providing legal advice to Plaintiffs without a license to practice law.

127. Defendants acted with malice and with the intent to injure Plaintiffs in retaliation for Plaintiffs' refusal to capitulate to their extortion which deprived the *Better Call Harry* show with another feather in its cap and slowed down its quest to heroically reach $1,000,000.00 in *recovered* fees.

128. Defendants aired, published and republished defamatory content that contained false statements of fact intended to lure customers away from engaging in Plaintiffs' businesses (as they had threatened they would do).

129. As a direct result of Defendants' intervention, Plaintiffs and their former client Margo Ellis were unable to *re-enter* into a business relationship and reach a resolution for their fee dispute. Defendants' conduct ultimately resulted in financial harm to Plaintiffs.

130. As a result of Defendants Samler 's, Meredith Corporation 's, Banks', and

John Does' intervention and blatant disregard for the truth, Plaintiffs and their former client, Margo Ellis, were unable to reach a settlement .

131.   Furthermore, as a direct and  proximate result of Defendants ' actions, Plaintiffs have suffered damages in the form of lost wages and lost business and the loss of their ability to earn an income at a level before Defendants' egregious acts and malicious defamation *per se*.

## <u>COUNT FIVE - TRADE LIBEL</u>

132.   Plaintiffs reallege and incorporate by reference Plaintiffs ' paragraphs 89 through 92 of their Complaint as if fully restated herein.

133.   Defendants published the Defamatory Content as statements of fact.

134.   Defendants in no way shape or form indicated that the Defamatory Content were to be interpreted as statements of opinion rather than fact.

135.   The Defamatory Content contains false statements of fact.

136.   Defendants aired and published defamatory content on or about May 28, 2019 , and then launched subsequent attacks on Plaintiffs through follow up videos and written stories .

137.   The Defamatory Content was published and republished onto Defendant CBS46 News' social media accounts including Facebook and YouTube (in order to spread Defendants' malicious defamation) where they continue to

be shared and viewed as of the date of this filing. Defendants authorize and consent to the republication of these clips, without correction, to this day.

138. Defendants published the Defamatory Content as statements of fact. Defendants in no way shape or form indicated that the defamatory statements were to be interpreted as statements of opinion rather than fact.

139. As a result of Defendants actions, the Defamatory Content has been repeatedly and foreseeably republished by media outlets and other third parties throughout the country.

140 . As a result of the Defendants' actions, Plaintiffs' personal and professional reputation were injured, and Plaintiff Fredrics was exposed to public hatred, contempt, and ridicule.

141. The false statements in the Defamatory Content are of and concerning Plaintiffs in that they allege Plaintiffs committed fraud and/or engaged in predatory and/or illegal business practices.

142. Plaintiff Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

143. The false statements defamed Plaintiff Fredrics in his trade and profession.

144 As direct and proximate result of Defendants ' actions, Plaintiffs have suffered damages in the form of lost income and business and reputations.

145. As a direct and proximate result of Defendants' actions, Plaintiffs' potential clients have refused to hire Plaintiffs for their services and have referenced the Defamatory Content that was published by Defendants as the reason for not hiring Plaintiffs.

146. The false statements caused actual damage to Plaintiffs, the full amount of which will be proven at trial.

147. Defendants' actions show willful misconduct, malice, fraud, wantonness , oppression and that entire want of care which raises  a presumption  of conscious  indifference  to  the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## **COUNT SIX - COMMERCIAL DISPARAGEMENT**

148. Plaintiffs reallege and incorporate by reference Plaintiffs' paragraphs 89 through 92 of their Complaint as if fully restated herein.

149. Defendants published the Defamatory Content as statements of fact.

150. Defendants in no way shape or form indicated that the Defamatory Content were to be interpreted as statements of opinion rather than fact.

151. The Defamatory Content contains false statements of fact.

152. Defendants aired the Defamatory Content on or about May 28, 2020 and then launched subsequent attacks on Plaintiffs through follow up videos and

written stories.

153. The Defamatory Content was published and republished onto Defendants' social media accounts including Facebook and YouTube where they continue to be shared and viewed as of the date of this filing.

154. Defendants authorize and consent to the republication of these video and/or audio clips (and/or printed media), without correction, even to this day.

155. Defendants  published the Defamatory Content as statements of fact.

156. Defendants in no way shape or form indicated that the defamatory statements were to be interpreted as statements of opinion rather than fact.

157. As a result of the Defendants' actions, Plaintiffs' professional reputations were injured, and Plaintiffs were exposed to public hatred, contempt , and ridicule.

158. The false statements in the Defamatory Content are of and concerning Plaintiff Bruce Fredrics and his business, PACS, LLC in that they allege Plaintiffs committed fraud.

159. The false statements defamed the Plaintiffs in their trade and profession.

160. As direct and proximate result of  Defendants' actions, Plaintiffs have suffered damages in the form of lost income, wages, and lost business; in addition to Plaintiff Fredrics' personal and financial hardships.

161.  As a direct and proximate result of Defendants 'actions, potential clients have refused to hire Plaintiffs  for their services and have referenced the Defamatory Content published by Defendants as the reason for doing so.

162.  As enumerated herein, as a direct result of Defendants' intervention, Plaintiffs and their former client, Margo Ellis, were unable to enter into a business relationship and reach a resolution of their fee dispute.

163.  Defendants' conduct ultimately resulted in financial harm to Plaintiffs .

164.  Defendant's malicious and false statements and interference caused actual damage to Plaintiffs, the full amount of which will be proven at trial.

165.  Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which raises a presumption of conscious indifference to the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## COUNT SEVEN - VICARIOUS LIABILITY

166.  Plaintiffs reallege and incorporate by reference Plaintiffs' paragraphs 4 through 6 of their Complaint as if fully restated herein.

167.  At all times relevant hereto, Samler and Defendants Banks and John Does were employees Defendant Meredith Corporation's CBS46 News and/or were employees and/or entities under the control or direction of Defendant

Meredith Corporation.[8]

168. At all times relevant hereto, Samler and Defendants Banks and John Does were engaged in the duties required by their employer, Defendant Meredith Corporation.

169. At all times relevant hereto, Samler and Defendants Banks and John Does worked within the scope of their employment with Defendant Meredith Corporation.

170. Therefore, Defendant Meredith Corporation is liable for the acts and omissions of their employees, Samler, Defendants Banks and John Does.

## **COUNT EIGHT - FRAUD**

171. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 30, 32, 34, 35, and 36 of their Complaint as if fully restated herein.

172. Plaintiffs show that Defendants falsely and fraudulently represented to Plaintiffs that they would not disparage, slander, or defame their character and professional business reputation[9] and Plaintiffs reasonably believed

---

[8] Defendant Meredith Corporation's CBS46 News was, at all times relevant hereto, under the control and direction of Defendant Meredith Corporation.

[9] First, Samler as employee of Defendant threatened to trash Plaintiff Bruce Fredrics if he didn't speak with him, convincing Plaintiff into telling Samler about their private businesses. Then, because Plaintiff was able to defend every lie told by Ellis, Samler became angry and showed his disappointment because, he realized that Ellis had duped him, and he had no juicy story after all. Curiously,

Defendants to their detriment and injury (see, also, FN #4).

173.   The representations made  by Defendants were in fact false as Defendants

did intend to (and planned to) slander, defame and disparage Plaintiffs on

Defendants Meredith Corporation's and Banks' *Better Call Harry* show .

174.   At the time these representations were made by Samler and Defendants,

Plaintiffs were ignorant of the falsity of Samler's and Defendants'

representations and believed them to be true to their word. Plaintiffs'

reliance on such false statements were reasonable and justified.

175.   Defendants, on the other hand, made the foregoing material

misrepresentations, knowing them to be false and contrary to applicable

state and federal law, with the intent to defraud and deceive Plaintiffs.

---

Samler was not mad that Ellis lied to him, he was mad that Plaintiff, the alleged crook, who he, as the alleged community hero, was going to expose was not really a crook at all. Samler also tried to tie-in the Quaran Bolden-Richardson case (where Plaintiffs were Defendants)  suggesting that the two case taken together proved that Plaintiffs were crooks. Plaintiff explained everything to Samler, and Samler essentially gave up on the phone, because there was no real story there. Samler was not happy about the outcome, but Samler and WCBS46 promised that they would not "smear" Plaintiffs on TV (on Samler's show "*Better Call Harry*" or otherwise). Defendants and their agents and employees knew the truth all along, and Plaintiff's testimony in the state court case was consistent with that truth. Defendant lied to the public anyway as a means to "get" Plaintiffs for exposing their extortion practices. The fact that Defendants knew the truth, accepted it, promised not to publish Ellis' lies, but then did it anyway to "get even" is rather telling. This was no accident, it was not negligence: ***it was wanton malice of forethought*** and purposely done to injure Plaintiffs.

176. As a proximate result of Defendants' fraud and deceit and the facts alleged herein, Plaintiffs suffered a concrete, particularized and imminent injury in that Plaintiffs have been defamed, maliciously accused of crimes. and deprived of substantial monies.

177. Further, Plaintiffs have suffered damages to their reputation and Plaintiff Fredrics was and continues to be exposed to public hatred, contempt, and ridicule and Plaintiffs suffered cancellation of contracts, and loss of business, in an amount exceeding One Hundred, Fifty Thousand & 00/100ths (**$150,000.00**) Dollars, to date, for which Defendants are liable.

178. In doing the acts herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs are entitled to damages of at least $150,000.

## COUNT NINE - PUNITIVE DAMAGES

179. Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 30, 32, 34, 35, 36, and 172 through 178 of their Complaint as if fully restated herein.

180. Plaintiff Bruce Fredrics is concededly a private figure and the false statements were made with actual malice, as alleged herein.

181. As direct and proximate result of Defendants' actions, Plaintiffs have suffered damages of at least $150,000.00 in the form of lost wages, lost

income, and lost business.

182.   Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which raises a presumption of conscious indifference to the consequences, and accordingly Plaintiffs are entitled to an award of punitive damages against Defendants.

## COUNT TEN - CONSPIRACY

183.   Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 30, 32, 34, 35, 36, and 172 through 178, and 180 through 182 of their Complaint as if fully restated herein.

184.   At all times relevant hereto, Defendants, individually and in concert (aided and abetted by Samler and Bauer), conspired to defame and harm and did defame and harm Plaintiffs.

185.   As direct and proximate result of Defendants' conspiracies and/or egregious actions and fraud, Plaintiffs have suffered damages in the form of lost wages, lost income, and lost business.

186.   As willing and active participants in the conspiracies, Defendants are jointly and severally liable for any and all damages or at least $100,000.00 suffered by Plaintiffs due to their herein-enumerated egregious actions and fraud.

## COUNT ELEVEN - ATTORNEY FEES AND COSTS OF LITIGATION UNDER O.C.G.A. § 13-6-11

187.  Plaintiffs reallege and incorporate by reference Plaintiffs' Paragraphs 30, 32, 34, 35, 36, and 172 through 178, 180 through 182, 184 through 186 of their Complaint as if fully restated herein.

188.  Under Georgia law, because of Defendants' egregious actions and fraud,[10] Plaintiffs are allowed the recovery of attorney fees and costs of litigation.

189.  As a direct and proximate result of Defendants' egregious actions and fraud, Plaintiff's have been forced to hire counsel (at a cost of Eighty-Five Thousand & 00/100ths ($85,000.00) Dollars, to date) and have been forced to pay for the litigation costs of this action. Plaintiffs have suffered damages to date of over Eighty-Seven Thousand & 00/100ths (**$87,000.00**) Dollars in attorney fees and costs, in the aggregate.

190.  Under Georgia law, *O.C.G.A. § 13-6-11*, Defendants are jointly and severally liable for any and all attorney fees and costs of litigation special

---

[10] Especially, i.e., Defendants' refusal to honor Plaintiffs' timely retraction and cease and desist requests (sent about the time as their spoliation letter to Defendant Meredith Corporation), and Defendants' threats by and through Bauer, their counsel, which were designed to chill Plaintiffs' First Amendment rights to seek redress from the courts, and which stifled Plaintiffs' hiring attempts for additional counsel to bring this action and to assist in its prosecution (one attorney, fearing Defendants' threats, recently withdrew from his representation of Plaintiffs).

damages suffered by Plaintiffs as determined by a fair and impartial jury but no less than Eighty-Seven Thousand & 00/100ths (**$87,000.00**) Dollars.

## JURY   DEMAND

191.   Plaintiffs hereby demand a trial on all issues presented herein and those ferreted-out during the discovery processes by a fair and impartial jury.

**WHEREFORE**, Plaintiffs respectfully demand the following:

a.   That Plaintiffs recover compensatory damages and lost earnings as determined by a fair and impartial jury but no less that One Hundred, Fifty Thousand & 00/100ths ($150,000.00) Dollars;

b.   That Plaintiffs recover general damages as determined by a fair and impartial jury;

c.   That Plaintiff recover punitive damages of nine (9) times any and all awards to Plaintiffs as determined by a fair and impartial jury;

d.   That Plaintiffs recover all expenses and costs, including attorneys fees, in amounts as determined by a fair and impartial jury but no less than $87,000.00; and

e.   That Plaintiffs have such other and further relief as this Court deems fair, just, and equitable; and,

## RULE 7 .1(D) CERTIFICATE

The undersigned counsel certifies that this document has been prepared with one of the fonts and point selections approved by the Court in *Local Rule 5.l-C*, to wit: Times New Roman, 14 point.

This 17th day of July, 2021.


/s/ *Ralph J. Villani*

**Ralph J. Villani, Esq.**
GA Bar No.: 727700

***VILLANI LAW FIRM***
821 Dawsonville Hwy.
Suite 250-333
Gainesville, GA 30501-2634

(TEL) 770.985.6773
(FAX) 770.979.5190

(Email) *ralphjvillani@gmail.com*

**Counsel for Plaintiff**